1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

BRENT D. FANDRICH,                              NO.  C13-111-RSL-JPD

9
                             Plaintiff,

10
        v.                                       REPORT AND
                                                 RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12
                             Defendant.

13

14         Plaintiff Brent D. Fandrich appeals the final decision of the Commissioner of the Social

15 Security Administration ("Commissioner") which denied his applications for Disability

16 Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

17 after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

18 the Court recommends that the Commissioner's decision be AFFIRMED.

19                        I.        FACTS AND PROCEDURAL HISTORY

20         At the time of the administrative hearing, plaintiff was a forty-one year old man with an

21 eleventh grade education.  Administrative Record ("AR") at 30, 139.  His past work experience

22 includes employment as a piano technician, desk clerk at a bowling alley, and caterer.  AR at

23 53-55, 140.  Plaintiff testified that he was last gainfully employed in 2009.  AR at 49.  On

24

REPORT AND RECOMMENDATION - 1

1    plaintiff's disability report, however, he indicated that he stopped working "because of my

2    conditions" on August 15, 2008.  AR at 139.

3         On May 26, 2010, plaintiff filed an application for DIB.  AR at 118-19.  During the

4    hearing, the ALJ identified his alleged onset date of January 1, 2006.  AR at 23.  Plaintiff

5    asserts that he is disabled due to herniated discs in the lumbar region and degenerative disc

6    disease with arthritis.  AR at 139.

7         The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 65-

8    71; 73-77.  Plaintiff requested a hearing, which took place on September 14, 2011.  AR at 60.

9    On October 11, 2011, the ALJ issued a decision finding plaintiff not disabled and denied

10   benefits based on his finding that plaintiff could perform a specific job existing in significant

11   numbers in the national economy.  AR at 23-31.  Plaintiff's administrative appeal of the ALJ's

12   decision was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final

13   decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 15,

14   2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 7.

15                  II.      JURISDICTION

16         Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

17   405(g) and 1383(c)(3).

18              III.      STANDARD OF REVIEW

19         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

20   social security benefits when the ALJ's findings are based on legal error or not supported by

21   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

22   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

23   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

24   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION - 2

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Fandrich bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

REPORT AND RECOMMENDATION - 3

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On October 11, 2011, the ALJ issued a decision finding the following:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date.

3.  The claimant has the following severe impairments: lumbar and thoracic spine degenerative disc disease, and obesity.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a).  He can frequently lift and/or carry 5 pounds frequently and 10 pounds occasionally.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1970 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.  The claimant has a limited education and is able to communicate in English.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision.

AR at 25-31.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in evaluating plaintiff's credibility?

2.   Did the ALJ err in evaluating the opinion of treating physician Steven Taylor, M.D.?

3.   Should this case be remanded for an immediate award of benefits?

Dkt. 16 at 1.

## VII.   DISCUSSION

A.   The ALJ Did Not Err in Evaluating Plaintiff's Credibility

   1.   *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the

REPORT AND RECOMMENDATION - 6

1  claimant's testimony as to the severity of symptoms solely because they are unsupported by

2  objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

3  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

4  that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

5  rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

6        When evaluating a claimant's credibility, the ALJ must specifically identify what

7  testimony is not credible and what evidence undermines the claimant's complaints; general

8  findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

9  consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

10  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

11  and testimony from physicians and third parties concerning the nature, severity, and effect of

12  the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

13  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

14             2.    *The ALJ Provided Several Clear and Convincing Reasons for Finding*
                     *Plaintiff Less Than Credible*

15

16        The ALJ found plaintiff's "medically determinable impairments could reasonably be

16  expected to cause the alleged symptoms.  However, his statements concerning the intensity,

17  persistence and limiting effects of these symptoms are not credible for the reasons set forth

18  below."  AR at 28.  Specifically, the ALJ found plaintiff less than fully credible because (1) his

19  activities of daily living are "inconsistent with his allegations of total disability;" (2) objective

20  medical evidence fails to substantiate plaintiff's allegations of disabling limitations; (3)

21  plaintiff's statements regarding his work activity were inconsistent; and (4) the ALJ's

22  observations of plaintiff's behavior at the hearing were not suggestive of a person who is

23  experiencing disabling pain.  AR at 28-29.

24

REPORT AND RECOMMENDATION - 7

1

        (1)     *Activities of Daily Living*

2           The ALJ found that "the claimant's activities of daily living, including caring for his

3  children including getting them ready for school and shuttling them to and from extracurricular

4  activities, doing household chores at his own pace, cooking, caring for a pet, generally going

5  outside on a daily basis, shopping, driving without difficulty 40 miles to visit his adult

6  children, attending family and his children's school functions, visiting his father on a regular

7  basis, and exercising regularly in February 2009, for example, are inconsistent with his

8  allegation of total disability."  AR at 28.

9           Plaintiff contends that this was not a clear and convincing reason, because plaintiff

10  "testified and the record corroborates he must do activities slowly and carefully and even still

11  has flares which incapacitate him for a week to two weeks six to eight times per year."  Dkt. 16

12  at 4.  Plaintiff points out that in his adult function report, he notes that his activities are limited

13  by back pain.  *Id.* (citing AR at 145).  As to those activities plaintiff does undertake, plaintiff

14  "noted he is unable to do any activities during a flare up."  *Id.* at 5 (citing AR at 45).  Thus,

15  plaintiff asserts that his daily activities are not inconsistent with his allegations that he must

16  perform activities in a slow and careful manner, and that during flare-ups he has difficulty with

17  any activity.  *Id.*

18           The Commissioner responds that the inconsistencies between plaintiff's activities of

19  daily living and "his allegation of total disability" was a clear and convincing reason for the

20  ALJ to discount plaintiff's credibility.  Dkt. 17 at 2.  The Commissioner points out that

21  plaintiff reported that he could sit for only 20 minutes before he would need to lie down, stand

22  up, or adjust, AR at 51, which is inconsistent with his ability to drive 40 miles to visit his

23  daughters in Bellevue, AR at 46.  Plaintiff also told the ALJ that "as far as physical play, I

24  don't do any of that," which was inconsistent with his other reports that he played catch with

REPORT AND RECOMMENDATION - 8

his son, and "as long as I am careful I can still do more of the household chores that need to be done" and that he "has been exercising regularly."  AR at 41, 288, 449.

A claimant's activities that are inconsistent with a claimed level of impairment are a proper basis upon which to formulate an adverse credibility determination.  20 C.F.R. § 404.1529(c)(i).  The Ninth Circuit has also clearly held that even when a claimant's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairments." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).  The ALJ did not err by concluding that plaintiff's reported daily activities, which included caring for his young children and shuttling them to and from extracurricular activities, doing household chores and cooking at his own pace, driving 40 miles to visit his adult children, and attending family functions, were inconsistent with his claims of total disability.  *See Turner*, 613 F.3d at 1225 (ALJ properly found discrepancy between stated limitations and reported daily activities undermined claimant's credibility).  Although plaintiff testified that his daily activities become very limited during a flare-up, he also testified during the hearing that he had not had a flare-up in two months, and when he does experience one he has found that medication such as pain killers and muscle relaxers "makes it more tolerable."  AR at 45.

(2)     *Objective Medical Evidence*

The ALJ also found that "the medical evidence of record also does not substantiate the claimant's allegations of disabling limitations.  For example, regarding his back pain, he alleges disabling since January 2006, but the medical evidence does not reveal any significant change or deterioration in his condition at that time."  AR at 28.  The ALJ noted that "[i]n fact, he admittedly continued to work until early-2008."  AR at 28.  The ALJ then discussed several specific examples of inconsistencies between plaintiff's testimony and the objective medical

evidence.  He noted that although plaintiff "has a history of disc protrusions at the L3-4, L4-5, and L5-S1 levels, as well as mid-thoracic degenerative changes . . . contrary to his hearing testimony that his pain radiates down his legs, there is no evidence of radiculopathy."  AR at 28.  Similarly, "[r]ecords from May and August 2008 show that the claimant's pain was non-radiating, and that he had grade 5/5 strength throughout and 2+ deep tendon reflexes.  In January and April 2009, he again had 5/5 strength throughout his upper and lower extremities, 2+ deep tendon reflexes, and negative straight leg raising."  AR at 28.

In February 2009, plaintiff reported exercising regularly, and in June 2009 "there was no evidence of inflammatory involvement or ankylosing spondylitis.  AR at 28.  The ALJ noted that "records from November 2010 indicate that the claimant had had an exacerbation of his back pain over the previous month, and that he walked with considerable thoracic kyphosis, particularly after sitting.  However, lumbar and thoracic spine MRIs showed no clear-cut nerve root compression, and the etiology of his increased symptoms was undetermined."  AR at 28. Finally, the ALJ noted that "follow-up records from May and June 2011 reveal that the claimant's back condition was stable.  He reportedly denied any joint pain, stiffness, or swelling when following up for his blood pressure in May 2011.  In short, the objective clinical findings and treatment records simply do not evidence disabling functional limitations."  AR at 29.

Plaintiff contends that "the ALJ may not reject a claimant's subjective allegations for the sole reason that objective evidence fails to corroborate the severity of the claimant's allegations." Dkt. 16 at 5 (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)).  Plaintiff concedes that plaintiff's November 2010 imaging showed "no clear-cut nerve root compression," but argues that "imaging does show that at L4-5, Mr. Fandrich has a large disk extrusion which 'comes in close proximity to both the L5 nerve roots and the lateral recesses at

1    this level.'" *Id*. at 6 (citing AR at 461). Similarly, "imaging of his thoracic spine without

2    contrast does show a 'right paracentral focal protrusion touches the right ventral cord and

3    causes mild right-sided cord effacement.'" *Id*. (citing AR at 469-70). Thus, plaintiff argues

4    that although there may be no "clear-cut nerve root compression," plaintiff "does in fact having

5    imaging which is abnormal and which shows a significant change from prior imaging," as his

6    large disk protrusion at L3-4 "has gotten significantly larger" in comparison to prior imaging

7    from 2004. *Id*. (citing AR at 460). Thus, plaintiff argues that "there is not substantial

8    evidence to support the ALJ's determination [that] objective evidence does not support Mr.

9    Fandrich's claimed limitations, particularly that he must be slow and careful in performing

10   activities and suffers from flares which leave him unable to do much activity." *Id*.

11           The ALJ did not err by rejecting plaintiff's testimony based, in part, upon the fact that it

12   was unsupported by objective medical evidence. The Ninth Circuit has asserted that although

13   "subjective pain testimony cannot be rejected on the sole ground that it is not fully

14   corroborated by objective medical evidence, the medical evidence is still a relevant factor in

15   determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari*,

16   261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir.

17   2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain

18   testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3

19   (the ALJ "must consider the entire case record, including the objective medical evidence" in

20   determining credibility, but statements "may not be disregarded solely because they are not

21   substantiated by objective medical evidence"). Thus, inconsistency between plaintiff's

22   allegations and the objective medical evidence was a relevant factor for the ALJ to consider,

23   among others, in determining plaintiff's credibility.

24

1    Here, the Court finds that the ALJ met her burden of "stat[ing] which pain testimony is

2    not credible and what evidence suggests the claimants are not credible." *Dodrill,* 12 F.3d at

3    918; *see also Holohan,* 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony

4    she or he finds not to be credible and must explain what evidence undermines the testimony.").

5    As discussed above, the ALJ pointed to numerous examples of objective evidence from the

6    record which he believed undermined the plaintiff's specific complaints.

7                    (3)    *Inconsistent Statements Regarding Work Activity*

8        In determining whether plaintiff has engaged in substantial gainful activity since

9    January 1, 2006, his alleged onset date, the ALJ noted that "the claimant admittedly worked

10   after the alleged disability onset date.  However, although there are inconsistencies surrounding

11   his work activity that tend to reduce his overall credibility, the evidence does not show that this

12   work activity rose to the level of substantial gainful activity as defined by the Commissioner's

13   regulations."  AR at 25.  In evaluation plaintiff's credibility, the ALJ again stated that these

14   "inconsistencies surrounding [Plaintiff's] work activity further reduce his overall credibility."

15   AR at 29.  Specifically, the ALJ noted that plaintiff "alleges disability since January 2006, but

16   he admittedly worked until early-2008, and his treatment records also suggest that he worked

17   after that time.  He was reportedly only sometimes unable to work in 2009; he was working at

18   his family's piano store in March 2010, although work was slow; and he remained employed in

19   July 2010, according to the records."  AR at 29.

20       Plaintiff contends that "the ALJ points to evidence which suggests Mr. Fandrich

21   worked after his alleged onset date . . . This evidence does not describe whether Mr. Fandrich

22   is working full time or just helping out in his family's business.  Two of the cited records are

23   actually the same treatment date."  Dkt. 16 at 7 (citing AR at 29, 290, 341, 349, 378).  "One

24   record never discusses whether Mr. Fandrich is working or not."  *Id.* (citing AR at 378).  In

1    addition, plaintiff's "earning records shows he has had no earnings since August 2008." *Id.*

2    (citing AR at 124). Thus, plaintiff argues that "the evidence cited by the ALJ provides only a

3    slim quantum of evidence upon which to find Mr. Fandrich has been inconsistent about his

4    work activity after his onset date." *Id.*

5          The Commissioner responds that although plaintiff alleged he became unable to work

6    on November 1, 2008, AR at 118, the record indicates that he worked at his family's piano

7    store as of June 2009 and March 2010 and that he was employed as of July 2010. Dkt. 17 at 3

8    (citing AR at 290, 341, 349, 378). The Commissioner asserts that the ALJ did not err by

9    pointing to four difference places in the record that support his conclusion that plaintiff worked

10   after his alleged onset date, and "this evidence was more than a mere scintilla and was 'such

11   evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion.'"

12   *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Commissioner points out

13   that "[o]ne strong indication of the credibility of an individual's statements is their consistency,

14   both internally and with other information in the case record." *Id.* (SSR 96-7p).

15         The fact that plaintiff has, on at least several occasions, made inconsistent statements

16   about the date that his back impairments caused him to stop working in some capacity is a

17   clear and convincing reason for the ALJ to discredit his credibility. As the ALJ noted,

18   although plaintiff alleges disability since January 2006, he later admitted working until early

19   2008, June 2009, and March 2010. AR at 290, 341, 349, 378. On plaintiff's application for

20   DIB, he reported that he "became unable to work because of my disabling condition on

21   November 1, 2008." AR at 118. During the hearing, however, plaintiff testified that he

22   stopped working "in early 2009." AR at 49. In addition, notes from the Rehabilitation Sports

23   and Spine Center dated June 2, 2009 provide that plaintiff "works at his family's piano store,

24   basically reconstructing pianos and selling new pianos. He has worked there for a 6 year

1    period of time." AR at 290, 349.  Notes from the same office dated March 18, 2010 again

2    indicate that he works at his family's piano store as a piano technician, and includes the

3    handwritten note that "work is slow." AR at 341.[3]  Here, the ALJ reasonably found that

4    although the evidence does not support a finding that plaintiff's work after his alleged onset

5    date rose to the level of substantial gainful activity, evidence in the record contradicts

6    plaintiff's statements about the date his impairments caused him to stop working. The ALJ did

7    not err by relying upon these inconsistent statements to discount plaintiff's credibility.

8                    (4)    *ALJ's Observations of Plaintiff's Behavior at Hearing*

9            The ALJ asserted that "after carefully observing the claimant at the hearing, I further

10   note that his verbal responses and overall demeanor were not suggestive of a person who is

11   experiencing disabling limitations."  AR at 29.  "While these observations are just one of many

12   factors that I have considered, he was able to answer questions quite clearly, despite his alleged

13   disabling pain."  AR at 29.

14           Plaintiff argues that the "ALJ's hearing observations alone are not a clear and

15   convincing reason to find a claimant not credible."  Dkt. 16 at 7 (citing *Fair v. Bowen*, 885

16   F.2d 597, 602 (9th Cir. 1989)) ("That a claimant does not exhibit manifestations of pain at the

17   hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain.").  Plaintiff

18   asserts that the ALJ "fails to state with any specificity what actions observed at the hearing

19   suggest Mr. Fandrich does not have a demeanor suggestive of a person experiencing disabling

20   pain . . . this reason alone is insufficient to find Mr. Fandrich is not credible for clear and

21   convincing reasons."  *Id.* at 7-8.

22

23
     _____
24          [3] Plaintiff is correct that the treatment notes from the Alpine Foot and Ankle Clinic
     dated July 19, 2010 do not indicate whether plaintiff was working at that time.  AR at 378.

REPORT AND RECOMMENDATION - 14

1    The Commissioner responds that although this reason, standing alone, is insufficient to

2    support the ALJ's credibility finding, the ALJ also provided other clear and convincing reasons

3    that are supported by substantial evidence.  Dkt. 17 at 4.  "An ALJ's own observations of a

4    Plaintiff, and comparison of those observations with other evidence of record, can contribute to

5    the evidence the ALJ considers in determining credibility."  *Id.* (citing *Morgan v. Comm'r of*

6    *Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

7    The Court agrees with the plaintiff that under the circumstances of this case, the fact

8    that plaintiff's "verbal responses and overall demeanor [during the hearing] were not

9    suggestive of a person who is experiencing disabling limitations" was not a clear and

10   convincing reason to discredit plaintiff's testimony.  AR at 29.  Plaintiff is not alleging any

11   mental impairments, and so it is unclear what kind of "verbal responses" the ALJ would expect

12   to corroborate plaintiff's testimony regarding the severity of his back pain.  Similarly, plaintiff

13   testified that his back pain becomes disabling during frequent "flare-ups," and he did not claim

14   to be experiencing a "flare-up" during the administrative hearing.  Thus, the fact that his

15   "overall demeanor" did not reflect disabling limitations is not a clear and convincing reason to

16   discredit his testimony.  Because the ALJ provided several other clear and convincing reasons

17   for finding plaintiff less than credible, however, this error was harmless.  *See Carmickle v.*

18   *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains

19   'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does

20   not negate the validity of the ALJ's ultimate [credibility] conclusion,' such [error] is deemed

21   harmless and does not warrant reversal.").

22

23

24

B.   <u>The ALJ Did Not Err in Evaluating the Opinion of Steven Taylor, M.D.</u>

1.   *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

REPORT AND RECOMMENDATION - 16

1    Opinions from non-examining medical sources are to be given less weight than treating

2  or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

3  opinions from such sources and may not simply ignore them.  In other words, an ALJ must

4  evaluate the opinion of a non-examining source and explain the weight given to it.  Social

5  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

6  more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

7  non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

8  consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

9  957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

10    2.    *Steven Taylor, M.D.*

11    Steven Taylor, M.D. completed a physical residual functional capacity questionnaire

12  for the plaintiff on August 12, 2011.  AR at 424-28.  He noted that he treats plaintiff "every 2-3

13  months," and described his diagnosis as "L3-4, 4-5, 5-S, HNP/Protrusions."  AR at 424.  He

14  noted that plaintiff's prognosis was "fair," and his symptoms include "low back pain" which

15  can present as "low back burning, aching, sharp stabbing, [that is] worse with standing,

16  walking, prolonged sitting."  AR at 424.  He opined that this impairment can be expected to

17  last at least twelve months, and that plaintiff cannot walk one city block without rest or severe

18  pain.  AR at 424-25.  Finally, he opined that plaintiff can sit for about four out of eight hours,

19  stand or walk for about four out of eight hours, occasionally lift ten pounds, and would likely

20  be absent from work about four days per month.  AR at 426-28.

21    The ALJ gave "limited weight" to Dr. Taylor's August 2011 assessment "which

22  indicates that the claimant would miss about four days of work per month as a result of his

23  medical condition, among other limitations."  AR at 29.  The ALJ noted that "such severe

24  limitations are not supported by the objective clinical findings or the claimant's activities of

REPORT AND RECOMMENDATION - 17

1   daily living." AR at 29.  "The assessment was apparently based in large part if not entirely on

2   the claimant's self-report, but, as noted, he is not entirely credible." AR at 29.

3           Plaintiff contends that contrary to the ALJ's statement that Dr. Taylor's assessment was

4   inconsistent with the objective clinical findings, "the treatment notes show Mr. Fandrich has

5   had low back pain due to disk protrusions."  Dkt. 16 at 16 (citing AR at 336, 338, 340, 344,

6   346, 348, 350, 352, 354, 356, 358, 360, 362, 402, 404, 430, 435, 440, 443, 446).  Plaintiff

7   points out that he has "periodic flares in symptoms."  AR at 402, 404.  In addition, examining

8   surgeon Sanford Wright, M.D., noted that plaintiff was "obviously uncomfortable," and that

9   "clearly this patient's lumbar spine has anatomically worsened over the past 6 years.  His

10  ability to manage the pain is borderline at times."  AR at 433.  Plaintiff also points out that

11  "imaging shows degenerative changes and herniated disks in both Mr. Fandrich's lumbar and

12  thoracic spine."  Dkt. 16 at 10 (citing AR at 460-63, 469-70).  In addition, plaintiff argues that

13  "even if not entitled to controlling weight because Dr. Taylor's opinion was unsupported

14  and/or inconsistent with other substantial evidence," the ALJ was still required to give it "some

15  deference."  *Id*. at 11. In addition, plaintiff contends that his activities of daily living,

16  "performed slowly and carefully or not at all during a flare up, do not contradict the limitations

17  opined by Dr. Taylor."  *Id*. at 12.  Finally, with respect to the ALJ's rejection of Dr. Taylor's

18  opinions as being based on plaintiff's subjective statements, plaintiff asserts that the ALJ erred

19  "by rejecting as subjective statements evidence which is properly objective in nature.  Dr.

20  Taylor bases his opinion of Mr. Fandrich's capabilities on his treatment over at least a three-

21  year period."  *Id*.

22          The Commissioner responds that "the trier of fact and not the reviewing court must

23  resolve conflicts in the evidence, and if the evidence can support either outcome, the court may

24  not substitute its judgment of that of the ALJ."  Dkt. 17 at 5 (citing *Matney v. Sullivan*, 981

REPORT AND RECOMMENDATION - 18

1    F.2d 1016, 1019 (9th Cir. 1992)).  With respect to the ALJ's assertion that Dr. Taylor's opinion

2    was "not supported by the objective clinical findings," AR at 29, the Commissioner points out

3    that "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a

4    doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Id*.

5    (citing *Bayliss*, 427 F.3d at 1216).  In this case, "although Dr. Taylor believed that Plaintiff

6    would miss about four days per month 'as a result of the impairments or treatment,' this check-

7    box assessment is entirely unexplained by reference to any clinical findings."  *Id*. at 6 (citing

8    AR at 427).  Moreover, "Dr. Taylor's treatment notes indicated that even when Plaintiff

9    reported 'flares' of his back pain that could potentially cause absence from work, the flares

10   were relieved with medication."  *Id*. (citing AR at 342, 348).  Thus, "Dr. Taylor's clinical

11   findings . . . do not support his opinion that Plaintiff would be absent from work about four

12   times per month."  *Id.*

13         The Commissioner also argues that the ALJ properly discounted Dr. Taylor's opinion

14   to the extent it conflicted with plaintiff's daily activities, because plaintiff reported that he

15   could perform all necessary household chores absent a flare-up of back pain and he had not had

16   a flare-up for two months.  AR at 42-43.  Finally, the Commissioner argues that the ALJ did

17   not err by finding that Dr. Taylor's assessment was apparently based in large part on the

18   claimant's self-report, which is less than credible.  *Id*. (citing AR at 29).  *See also Tommasetti*,

19   533 F.3d at 1041.  The Commissioner points out that "Dr. Taylor offered no explanation of the

20   objective basis for his opinions," other than to note that plaintiff had range of motion

21   limitations.  Dkt. 17 at 6 (citing AR at 424).  Thus, it was reasonable for the ALJ to find that

22

23

24

REPORT AND RECOMMENDATION - 19

Dr. Taylor "based his assessment of the exact degree of Plaintiff's limitations largely on Plaintiff's own subjective reporting." *Id.* at 6-7.[4]

The Court agrees with the Commissioner that the ALJ properly articulated several specific and legitimate reasons for finding Dr. Taylor's opinions less than credible. As discussed above, the ALJ gave "limited weight" to Dr. Taylor's opinion that plaintiff would miss four days of work per month, among other limitations, because "such severe limitations are not supported by the objective clinical findings or the claimant's activities of daily living." AR at 29. The ALJ explained in his written decision that although plaintiff alleges disability since 2006, "the medical evidence does not reveal any significant change or deterioration in his condition at that time. In fact, he admittedly continued to work until early-2008." AR at 28. It is undisputed that Dr. Taylor's treatment notes (as well as the treatment notes of examining surgeon Sanford Wright, M.D.) reflect that plaintiff experiences back pain due to disk protrusions. AR at 336, 338, 340, 344, 346, 348, 350, 352, 354, 356, 358, 360, 362, 402, 404, 430, 435, 440, 443, 446. However, plaintiff has not contested the ALJ's findings that Dr. Taylor's treatment notes also reflect no evidence of radiculopathy, negative straight leg raises, 5/5 strength throughout, 2+ deep tendon reflexes, and that plaintiff has consistently reported palliative pain relief from his medications without ongoing side effects. AR at 28. In addition, "lumbar and thoracic spine MRIs [from 2010] showed no clear-cut nerve root compression, and the etiology of his increased symptoms was undetermined." AR at 28. "Follow-up records from May and June 2011 reveal that the claimant's back condition was stable," and therefore

---

[4] The Court agrees with the Commissioner that the ALJ did not rely on the opinion of a state agency reviewing consultant, Dr. Platter, in order to reject Dr. Taylor's opinion. Specifically, the ALJ did not adopt Dr. Platter's December 2010 opinion into the RFC assessment in this case, as the ALJ only afforded it "some weight" and stated that "as a precaution given the claimant's allegation that he must limit his activity to avoid flare-ups, I have limited him to lifting only 10 pounds occasionally and 5 pounds frequently." AR at 29.

1   "in short, the objective clinical findings and treatment records simply do not evidence disabling

2   functional limitations."  AR at 29.

3         Dr. Taylor's August 2011 check-box assessment is entirely devoid of any reference to

4   objective findings to support his opinion, apart from a brief reference to range of motion

5   limitations.  Specifically, the physical residual functional capacity questionnaire asks the writer

6   to "identify the clinical findings and objective signs." AR at 424.  Dr. Taylor responded,

7   "ROM limitations," without any further explanation.  AR at 424.  Thus, the ALJ did not err by

8   rejecting Dr. Taylor's opinion, in part, because it appeared to be unsupported by objective

9   clinical findings to support the degree of disability he described.  *See Bayliss*, 427 F.3d at 1216

10  (providing that an ALJ need not accept the opinion of a doctor if that opinion is brief,

11  conclusory, and inadequately supported by clinical findings).  In light of the fact that Dr.

12  Taylor failed to identify any objective findings to support his opinions, the ALJ could

13  reasonably assume that his assessment was based in part on the claimant's self-report, which

14  was less than fully credible.  AR at 29.

15        It was also proper for the ALJ to reject Dr. Taylor's opinion on grounds that it was

16  contradicted by plaintiff's own statements regarding his activities of daily living.  *See Rollins*

17  *v. Massanari,* 261 F.3d 853 (9th Cir. 2001) (holding that an inconsistency between a doctor's

18  opinion and the claimant's admitted daily activities is grounds for rejecting a treating source

19  opinion); *see also* 20 C.F.R. § 416.927(c)(4) (explaining that more weight is given to opinions

20  that are consistent with the record as a whole).  As discussed above, plaintiff's activities of

21  daily living include caring for two young children, shuttling them to and from extracurricular

22  activities, doing household chores at his own speed, cooking, shopping, driving at least 40

23  miles to and from home to visit adult children, and attending family and school functions.  The

24  ALJ did not err by finding these activities inconsistent with Dr. Taylor's opinion that plaintiff

REPORT AND RECOMMENDATION - 21

1    would miss about four days of work per month and cannot sit for longer than 20 minutes or

2    stand longer than fifteen minutes.  AR at 425, 427.  Accordingly, the ALJ provided several

3    specific and legitimate reasons for rejecting Dr. Taylor's opinion.

4           The role of this Court is limited.  As noted above, the ALJ is responsible for

5    determining credibility, resolving conflicts in medical testimony, and resolving any other

6    ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to

7    more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

8    *Thomas,* 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff

9    suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

10   interpretation.

## VIII.   CONCLUSION

12          For the foregoing reasons, the Court recommends that this case be AFFIRMED, and

13   this matter DISMISSED with prejudice.  A proposed order accompanies this Report and

14   Recommendation.

15          DATED this 27th day of September, 2013.

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22